for the defendant appellant Darwin Henderson. Shortly after midnight on April 30th, 2007, Rashad Waldrop and Jonathan Phillips were shot in an apartment building stairway. Mr. Waldrop died in a car accident. And Mr. Phillips survived. Subsequently, the defendant was charged with the murder of Mr. Waldrop and the attempted murder of Mr. Phillips. There were no witnesses who testified that he or she saw the defendant shoot the victims, and there was no physical evidence that connected the defendant with these crimes. The closest that the state came to presenting direct evidence of the defendant's guilt was actually, it came in the form of a prior inconsistent statement, the truth of which was denied by a man who was chargeable as the defendant's accomplice, Twan Fields. The prior inconsistent statement was made to Mr. Fields' own uncle and claimed that the defendant was a black hooded man who shot the victims. It was made to his own uncle because his uncle was a defense attorney. A black hooded man or a black hooded man? A man wearing a black hood. Thank you. Videos that were taken from security cameras mounted all over the building left no doubt but that Mr. Fields was involved in setting up the offense and was at the shooting scene. And as far as anyone can tell, he had actually committed the offenses. Mr. Fields did later recant his statement to his uncle, Investigator Jenkins, and claimed that his uncle, at trial he claimed that his uncle had made him make the statement in order to save himself. The recantation, of course, reduced the reliability of everything that Mr. Fields had to say about the shooting, which would have been not much reliability anyway given his status as an accomplice. And the rest of the evidence that was presented at this case, at this trial, was equally unreliable, that which actually indicated that the defendant was involved in the crimes. Now, briefs, we argue the defendant was proved, not proved guilty beyond a reasonable doubt. However, the rules for assessing the sufficiency of evidence are very well established and the facts of this case we believe are thoroughly discussed in our briefs. So unless your honors have any questions regarding that claim, I would like to start this morning by addressing our second argument. There's really two closely related claims, that the trial court erred in allowing attempt to murder victim Jonathan Phillips to exercise his Fifth Amendment right against self-incrimination, and alternatively, that the state denied the defendant due process of law by refusing to grant Phillips immunity so that he would be able to testify for the defendant. Waldrop and Phillips were shot shortly after midnight. It was undisputed that earlier the very same day there was a fight in a park during which Phillips and Waldrop attacked the defendant and Phillips ripped a chain, a gold chain off of the defendant's neck. A little later, there was another encounter between the defendant and Phillips and Waldrop at a gas station where the defendant demanded the return of his neck chain and Phillips supposedly ripped it up and said, you have to get it in blood. According to the state, that incident provided the defendant with a motive to commit these crimes. Surprisingly, the state did not call Phillips to testify regarding who shot him. Instead, it was the defense who called Phillips, obviously expecting his testimony to help the defendant's case, and it probably would have helped because several months before the trial, Phillips made a recorded statement to defense counsel in which he said that he knew who had shot him and it was not the defendant. The defendant expected Phillips to testify to the same thing. That's the same thing he told Bickett, and that testimony came in at the trial. I'm sorry? That's the same thing he told witness Bickett, B-I-C-K-E-T-T, and that evidence actually came in. What happened with Jessica Bickett is that this was kind of an odd situation that arose at the very end of the trial where it looked like an exchange for the defense helping the state by stipulating to a foundation for some evidence. The defense stipulated, or the state was willing to stipulate that if called, Ms. Bickett would say that she was present when somebody else asked Twan Fields who shot you, I mean, asked Dr. Phillips who shot you, and Phillips replied, Don Juan, Don Juan, which was Twan Fields' nickname. That's true. However, that stipulation also included Jessica Bickett's alleged claim that she had heard around that the defendant was also involved in the shooting. This is not the sort of evidence that the defense would want to have, and certainly wouldn't have made any attempt to bring in Jessica Bickett to testify to any of this stuff, if any of it even had any reliability given its extreme hearsay nature. All of it was hearsay. Did the defense counsel request that he interrogate the witness as a hostile witness and therefore be allowed to ask leading questions? No. No, he did not. He simply, defense counsel simply called Jonathan Phillips whereupon Jonathan Phillips said that he was taking the fifth. And so right at the beginning we had this problem where he was claiming that he could exercise his right against self-incrimination. The problem here is that the court did not make a proper inquiry into what the basis for his belief was because the right to refuse to testify to a criminal trial does not exist where there are no reasonable grounds for the witness to fear that he might incriminate himself. Now specifically, was there anything put in the record by way of proffer as to what defense believed Phillips would testify to if called and given immunity or didn't plead the fifth? At the time that it arose, at the tail end of the trial, the defense did not tell the court what it was that they expected Phillips to say. However, at the hearing on the post-trial motion, defense counsel attached a transcript of this recorded conversation that he had with Phillips in which Phillips quite clearly said, I know who shot me and it wasn't the defendant. Which is exactly the same thing that he told Bickett. Well, he didn't tell Bickett anything. Bickett claimed she overheard him say, Don Juan, Don Juan, an answer to, you know, at a time when he's bleeding from a head wound and is in pretty bad shape. You know, somebody says to him, we don't even know what the question was exactly. But she said she heard someone who she doesn't identify or that the people who paraphrase her thing don't identify as asking him who shot him and then having Phillips reply, Don Juan, Don Juan. We don't even know the full context of that, what that answer was, whether he was calling out to Don Juan as somebody who, you know, to help him for all we know. I mean, whether it was responsive or not, we can't tell. But most important, again, that information is tainted by the fact that it comes attached to Bickett's further statement and the defendant was also involved. What I'm getting at is the transcript that's attached to the post-trial motion, does it indicate in any way that the defendant was not involved? We're talking about who shot him. I mean, he tells Bickett, Don Juan shot me. And then he tells the defense attorney, the defendant did not shoot me. Now, was the defendant involved or not? I mean, you're complaining about the extra part of this statement for Bickett, but is that refuted by the statement to the defense attorney? No, no, not anymore than what we've already said. I mean, the content of it is rather limited on the subject, that is true. However, it is still the case that to have the victim say, this is not the person who shot me at a minimum, it would knock off the 25-year add-on for the attempt murder. And so, you know, if the defendant was not the one who shot Jonathan Phillips. If he was merely accountable because Field shot him, that the 25 years would not be attached? Not 25, then it would probably be 15, I think it is. The ones that do not require personal discharge, if you can prove that he was accountable. What about accountability for murder? Would it have made any difference in the sentencing? For the shooting of Waldrop, it's not evidence about Waldrop one way or the other. So, certainly if he, you know, and again, Phillips, another thing that Phillips might have testified about. They had him on record just talking about this one little aspect of the case, but he might have talked about other things that had happened during the shooting. Was there not evidence that there was a conspiracy and that the two were aiding and abetting each other? And if that's the case, wouldn't they both be accountable for both shootings? Yes, but there really isn't proof beyond a reasonable doubt of what happened in that stairwell. That's true. We say that there was probably a prima facie case for a conspiracy between Mr. Fields and somebody wearing a black hood, but we don't know who that somebody is. Well, my only point, and I'm not even sure I'm trying to make it, is the testimony that was to be elicited doesn't necessarily, in my mind, exonerate your client. It would, I think, do so if he said that Joe Blow shot me and Joe Blow wasn't involved in any way, shape, or form with your client. But if A and B are involved in a conspiracy and a victim says A shot me and your client's B, I don't see how that is exculpatory. Well, first of all, it doesn't have to be exculpatory in order to warrant you being able to be called. It just has to be relevant. In other words, it can be relevant and inculpatory, and therefore the attorney is not only competent if he elicits this testimony, but he's considered to be sage as well? No. I guess what I'm trying to say is that you seem to be saying that unless Jonathan Phillips' testimony would completely eliminate any possibility that the defendant was in any way involved in this crime, that the defendant wouldn't be entitled to relief, but the law doesn't really say that. It says that it must be relevant and it must not be cumulative. Certainly it's relevant and it would certainly exculpate the defendant from the charge that he shot Phillips, but it would be still relevant to other aspects of the case. If Phillips appears to be the only person who would have been willing to actually explain what happened, I mean, there's at least a possibility that if he had been put on the stand, the defense must have had reason to believe that nothing he would say if he testified would be harmful to the defense. You claim that defense counsel was ineffective? Correct? No, I'm not arguing that he's ineffective. I was arguing... And you agree that he raised the issue, correct? Well, what I argued is that he... No, I don't think I did. Oh, my last issue, my last claim is that post-trial defense counsel was ineffective in his handling of the defendant's pro se arguments that trial counsel was ineffective. So here the error is made first by the court. He did not make a determination based on the particular facts of the case that Mr. Phillips would indeed face, you know, the possibility of incriminating himself or him to testify. And second of all, that even when he kind of belatedly did, the court did kind of belatedly at the post-trial hearing acknowledge he didn't make that determination, but he said, I would have made it anyway. The only particular facts that are imaginable on this record are this park incident hours earlier that conceivably Phillips could be charged with having stolen the defendant's neck chain. The thing is, the testimony the defense said when they called Phillips, they had no intention of talking to him about the park incident. All they wanted to ask him about was the shooting scene. And it would have been very easy to simply limit the scope of the examination to the shooting scene. I think Justice Burke made some reference. Was there ever an offer of proof where defense counsel said, these are the questions I was going to ask, and this is what I think would have been the response? Ergo, Judge, how can this be self-incriminating? No, no. And that's because the court really didn't create an opportunity for that because the court didn't hold a hearing on that question. Instead, what the court did was appoint a counsel to advise Mr. Phillips. And then that attorney came back and simply told the court, I've advised you to take the fifth. And the court never asked based on what and just accepted that decision. That's all well and good, except that. It strikes me that the next step after what you just described would have been the lawyer should have said something to the effect, well, Judge, if that's your position, then I would like to make an offer of proof to perfect the record so that when Ms. Hamill comes up to argue before some elite panel of jurists, that there will be a record prepared such that they will be able to rule on the merits. And I don't think it happened that way. I agree. I agree. That would be a better record for us. It would at least help to establish whether or not there was prejudice. Well, we do at least have this transcript attached to the post-trial motion, which does evidence some of what Phillips had said. And that alone, for Phillips to be willing to say, I, you know, he didn't shoot me, is important. So we say there was no record basis for the court's decision to allow Phillips to take the fifth. And alternatively, we argue that the state denied the defendant due process of law when it refused to grant Phillips immunity after the court allowed him to take the fifth. It's true that only the state can grant use immunity. I want to stop right here and apologize to your honors. I just realized when I was preparing for this argument that I had cited the wrong immunity statute. I cited 5 slash 106-1. I should have been 5 slash 106-2.5B. Both address the situation, but the second one is more particular, and it's the right one here. And it actually, if anything, helps our case because under that statute, it is absolutely mandatory that if the state requests or says we're granting use immunity, the court has no role in that. The court's role is merely ministerial at that point. But despite the general rule that the state is the only party that can grant immunity, federal courts have recognized that it is unfair to let a prosecutor deliberately distort the judicial fact-finding process by denying immunity to a potential defense witness just a week in the defense case. The federal test that is first, would this testimony be relevant and not cumulative? And here it certainly would be relevant that the victim would say the defendant didn't shoot me. And we've already kind of discussed the cumulative thing, whether or not the Jessica Bickett thing renders it cumulative. And I, again, maintain that it does not, simply because it came with the baggage of and the defendant was also involved. And if the defendant had his brothers, he'd certainly forego Ms. Bickett and go with Jonathan Phillips. So then if those things are satisfied, we then look at whether... Any other questions? Your time's up, I believe. Oh. Did I hear it or not? Can I continue or not? Why don't you close the floor? All right. I'm simply on this that you look at whether or not the state intentionally distorted the fact-finding process. And one situation that is regularly recognized is where the state has granted immunity to one of its own witnesses and then denied immunity to a defense witness. That's exactly what happened here with Mr. McClung, whose testimony, whose possible crime would have been far more serious. It would have been an accomplice to this murder. And whose testimony was circumstantial evidence of the defendant's guilt, but not direct evidence exonerating as the case here. So I thank you. I'm sorry that I ran over and... No problem. Thank you. Thank you. Ms. Joseph. Good morning, Your Honors. May it please the Court? Yes. Counsel. The people are briefly going to touch on the reasonable doubt argument. These were all credibility determinations. The trial judge knew of any deficiencies in the evidence, knew of the relationship Fields had with Detective Jenkins. And these were determinations within purview of the trial judge. Going on to the Fifth Amendment issue, the people again assert that the defendant here has forfeited the claim by acquiescing to the procedure used. When the question came about and Phillips decided to assert his Fifth Amendment privilege, the trial court recognized that he would have to make a determination whether there was a reasonable belief that he could be self-incarcerated and decided to appoint counsel for Phillips. They came back the next day, and it went beyond Phillips making his own statement that I would be self-incarcerating myself. It's his attorney, his appointed attorney making that statement. It was specifically that... Do you agree that the court has to make a finding at that point in time or not? I think the finding was implicit in allowing the defendant, or not the defendant, I'm sorry, Phillips to invoke his Fifth Amendment privilege. The attorney came back, Phillips' attorney came back and said, I know what the defense is going to question Phillips about. And based on that, it would open him up on cross-examination to something that would self-incriminate him. So it's not just... Unfortunately, the record doesn't tell us what this self-incrimination was. And the people assert that based on Phillips' attorney's statement, it may have had to do more than the incident with the chain. As it was directly, the cross-examination would have been directly related to what the defense wished to present through Phillips' testimony. But the only thing in the record was the chain thing. The prosecutor made that statement. And then the attorney made the statement that based on what the defense wanted to use Phillips for, that that would open him up to cross-examination, which would have a reasonable fear of self-incrimination. I mean, the court could have easily inquired, because the defense was indicating all along that they only wanted to go into this shooting in the stairwell and nothing else. That is correct, Your Honor. And then the court could have said, well, what are we talking about here as far as opening him up to cross-examination on something other than what happened in the stairwell? And then the court could have made a reasoned decision as to whether or not it could limit that testimony. In a perfect world, Your Honor, that would have been the preferred procedure. But the people are submitting that based on Phillips' attorney's representation, that he was able to ascertain that there was a fear of self-incrimination. The judge also knew the rest of the evidence in the case, as Phillips was the last witness to testify. So he knew that Phillips was present at the crime and all of the attenuating altercations earlier in the day. Also, the people, as Justice McClaren pointed out, because of the lack of a proffer in the record, we don't know what precisely Phillips would have testified to. And because we don't know what he would have testified to, we don't know what impeachment or cross-examination that would have directly led to. So we don't know how the outcome of the case would have been different had Phillips been able to testify. Also, as the people pointed out in their brief, Phillips was not the only person that could have testified about the shooting. As defense mentions in their fourth issue in the brief, on page 54, it must be recognized that the shooting most likely was witnessed by several people, at least some of whom can be presumed to have known the defendant and have been able to recognize him. So defense is aware that there are other witnesses that could have been presented. Phillips, while they claim he may have been the best witness to describe who the shooter was, he was not the only witness and not the only person present in that stairwell. What's your response to Ms. Hamill's statement that the state didn't prove the defendant guilty beyond a reasonable doubt? The people respond that their attacks, again, were all in the credibility of the witnesses, though there were recanted prior inconsistent statements. She does not attest that those were improperly admitted before the court, that the trial judge made statements as to, yes, I recognize the fact that some of this evidence may be under suspicion because it was recanted prior inconsistent statement or because there was a deal made by the prosecution. However, he did recognize that much of this evidence was consistent with each other, and he made reasonable inferences such as the defendant's car was present, therefore could reasonably infer the defendant was present, and made the reasonable inference that Fields wouldn't have allowed a hooded figure into an apartment if he didn't know who the person was. So, as far as the arguments, these were credibility determinations which the trial judge properly weighed. Also, briefly, on the hearsay statements, Hosea's statement that... Let me ask you this before you run out of time. It's fine. Did the prosecutor engage in misconduct by granting immunity to his or her own witnesses and then denying immunity to Phillips? The people do not believe so, Your Honor. The prosecutor can call whatever witnesses he wants and grant immunity to whatever witnesses he wants, and here, again, unable to show prejudice as there were alternative witnesses who witnessed the shooting. This evidence would have been relevant. I mean, would it or would it not have been relevant for Phillips to take the stand and say the defendant did not shoot you? That would be relevant testimony to the case, yes, Your Honor. What about these federal cases cited by counsel that... where the prosecution denies immunity and precludes the presentation of relevant evidence and the fact-finding process is distorted, that that's misconduct? Number one, Your Honor, as the people asserted in their brief, that these cases have not officially been adopted by any Illinois court because the Supreme Court did not cite to them. They're taking up of... I'm sorry, I don't remember. It was Rosenberg. Rosenberg, yes. But Rosenberg also did address the fact that there were other witnesses available. As far as... Here, there was, along that line, there was no distortion of the fact-finding process because this was one witness among many who the defense could have called to testify. So not granting immunity to one was not going to prevent... Let me ask you a question, too, please, because I want to get the nub of what you're discussing. It seems like you're running around and not asserting... And that is that if a witness takes the stand and starts answering some questions, does that witness waive the right against self-incrimination for the rest of the day or the rest of the week? Or can that witness raise the Fifth Amendment to refuse to answer further questions? I don't think I'm quite understanding the question completely. Well, Justice Burke was asking you questions about, isn't it relevant? Yes, it's relevant. Okay, and then why shouldn't the state have granted immunity for that statement? Well, I don't think immunity is necessary if it's not incriminating. And if the question was, did this person shoot you, I don't see how that's incriminating. So unless there are other questions down the road that this witness is not allowed to refuse because he's answered a question, the door hasn't just been opened, but the house has literally been built. And the point being, just because a question is asked, who shot you, does that then mean that he has to answer every question about the last six years of his life? I don't think it does, do you? No, Your Honor, and I don't. Okay, so if in fact that's true, then why does the state have to grant immunity to elicit an answer to a question that's not incriminating? The state would not have to grant immunity for that. It would have to grant immunity if... They would only have to do so if, by answering that question, then the witness could no longer claim the Fifth Amendment if some question was raised that was going to incriminate him. In other words... Never mind. Immunity would be granted if in event that there was something... The state could have granted him immunity, and if he never said anything that was incriminating, it wouldn't have made any difference anyway. Correct. So if he's not saying anything self-incriminatory, immunity would not have been needed. Very good argument. Briefly on the hearsay. The statements were made prior to the crime during the course of the conspiracy. Posey's statement that to go in, they're on some bullshit. This was Fields getting Posey away while he and Fields were planning the conspiracy. Defense pointed out that there was no evidence that there was a conspiracy between Fields and the defendant. I think both of these hearsay statements, which were properly admitted under the conspiracy exception, established that it was the defendant and Fields. Where did the defendant allegedly get the firearm? Was that from Fields or from someone else? How? Oh, the defendant got the firearm from Fields, who got it from somebody else at the party. And Fields was Tawana Fields? Tawana Fields. And Tawana Fields was the person to whom Don Juan was referenced? Yes, and the defendant was Bling. And the second statement was more a statement that watched what me and Bling about to do. The defendant in their brief mentions that, well, these were alerting people to the crime about to be committed. That's really irrelevant if Fields, what the actions of these people who heard the statements is irrelevant. And the people are just saying that while this may be bragging, it is also an exception as a co-conspirator statement. Furthering the conspiracy, it wasn't just about shooting the victims. Having an audience showing them, hey, these are gang members. This is sending a message to the other gang members. They wanted visible revenge and public justice. And it was therefore both of the statements were properly admitted under the co-conspirator statement. Are there any other issues with which the court? I don't know. Okay. Thank you, Your Honors. Do you know the difference between a circle and an ellipse? Yes. What is it? One has equidistance from the center, a circle. Every part of the curve is equidistant, while an ellipse, some are closer. I do do the elliptical, so. I think the definition is, is a circle, the line is always the same distance from the center of the circle. Whereas with an ellipse, the totality of sums between the two foci or the two points in the middle will always add up to the same distance. Okay. So if you took a line from one and the other to a point, you'd get a constant. And there will be a quiz later. I went to law school to avoid math. Ms. Hamel. I'm afraid the argument bounced around so much, I'm not quite sure where to respond. I simply do want to point out that regarding our reasonable doubt claim, that all of the testimony that connected the defendant to the crime, that in any way indicated that he was involved, came, was inherently unreliable in some way. It was always purchased in return for favors or favorable treatment to the testifying witness, with the exception of Twan Fields, but he certainly had plenty of offers, he just chose to deny or to reject them. And it also significantly was every single one was either elicited by Detective Jenkins, who is Twan Fields' uncle and probably had a familial desire to help him regardless of whether he wanted to be helped. Do you think the videotapes had any probative value at all? No, only insofar as they connected Mr. Fields with the offense and indicated that he and somebody wearing a black hood were somehow involved. Wasn't there testimony about white gloves? The color of the gloves changed throughout the testimony. Sometimes they were white, sometimes they were black. In fact, Nakia Hosey testified that she saw the defendant outside wearing a white hoodie, which raises a serious question as to whether or not the defendant was ever in the building wearing a black hoodie. Last, I would like to just say that regarding the hearsay testimony, whether or not it furthered the objectives of the conspiracy or had any possibility of doing so, I think it is clear that both statements were simply pre-crime bragging. There was no reason to say watch what me and Bling about to do that would further the conspiracy. Rather, it alerted Mr. Moore to the fact that something was about to happen and then when it was immediately afterwards, Tuan Fields was seen receiving a gun from somebody, that was a message that it might be something violent. Did you see any cases where pre-crime bragging has been found to be not co-conspiracy? I did not find any cases that addressed the pre-crime things said by conspirators. However, I think this case is a really good example of the fact that not everything that a conspirator says prior to a crime advances the conspiracy. It actually obstructs it here. Here, when he made his remark to Nakia Hosey, she promptly went upstairs and attempted to warn the shooting victims that the defendant is outside, you better watch out. But if we can figure out any way that it can be classified as a co-conspirator statement, we'd have to affirm based on an abuse of discretion standard, correct? Yes, that is the standard. However, again, I think that where a conspirator lets the cat out of the bag, lets people know that something's going to happen gratuitously just because he can't keep his mouth shut, which apparently was the case here, that that is not a statement of furtherance of the conspiracy. That's an incredibly bad person to be in the conspiracy with. Yes, I agree. Well, thank you, Your Honors. Okay, thank you. The case will be taken under advisement. It will be a short brief.